JOHN T. ARMSTEAD v. LUTHER MENDENHALL.[1]

May 3, 1901.

Nos. 12,569—(76).

Street Railway—Right in Streets.

A street-car company operating cars upon public streets and other persons lawfully occupying such streets have rights alike, in the main. The cars cannot turn out, as can persons driving or walking, so that in this respect it may be said that the company has a paramount right over its tracks.    Beyond that, the duties of the parties are reciprocal, and so are their rights.    Except as before indicated, they are charged with the same measure of care and the same duties.

[1] Reported in 85 N. W. 929.

### Ruling of Trial Court.

A certain assignment of error directed to a ruling of the court upon the admission of the evidence considered and disposed of. *Held*, that the court did not err.

### Contributory Negligence.

*Held* that, from the evidence, it did not conclusively appear that the driver of a horse injured in a collision with a street car was guilty of contributory negligence.

Action in the municipal court of Duluth against defendant, as receiver of the Duluth Street Railway Company, to recover $179 damages for injuries to plaintiff's horse and wagon caused by collision with a street car. The action was tried before Edson, J., and a jury, which rendered a verdict in favor of plaintiff for the amount demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Greene & Wood*, for appellant.

*John Jenswold, Jr.*, for respondent.

COLLINS, J.

This was an action for the recovery of damages for injuries to plaintiff's horse and wagon, the result of a collision with one of defendant's street cars operated by electric power.

The horse was being driven by plaintiff's servant westerly along Michigan street, in the city of Duluth. The driver was seated in the wagon, which was covered, and had stopped at the intersection of the street with Twelfth avenue in order that a mail carrier might get in and ride with him. After the carrier was seated the driver started up his horse, attempted to cross the north track, and was run into by the car. He claims that before starting the horse he looked to the east, but saw no car; and the mail carrier also testified that just as he was stepping into the wagon he looked up the street, which he had just crossed, but did not see the car. The motorman admitted that he saw the horse and wagon for a distance of more than three hundred feet before the car struck the horse, and he claimed that the collision occurred because the driver suddenly turned the animal in front of the

car, giving him (the motorman) no opportunity to stop it in time to avert the accident. There was the usual conflict as to the motorman's omission and failure to signal or sound the bell as he approached the wagon from the rear, but the testimony on this point justified the jury in finding that no signal was given. There was also some dispute over the speed of the car, and as to whether the driver turned his horse upon the track immediately upon ,starting, or proceeded diagonally along the street fifty or sixty feet before attempting to cross the track.

1. It was a question for the jury to determine whether the car was running slowly (about five miles an hour), or more rapidly (say, twelve miles an hour); and it was also for the jury to determine whether the driver turned immediately upon starting the horse, or approached the track diagonally, reaching it about fifty or sixty feet from the point where the mail carrier got into the wagon. If the horse proceeded along the street fifty or sixty feet, gradually approaching the track, and thus indicating the driver's purpose to cross, it was the duty of the motorman, who saw both horse and wagon, upon his own admission, from the time they were within three hundred feet, to have his car under control, and thus avoid a collision. The driver's prior negligence would not relieve the motorman from exercising an ordinary degree of care, or excuse the defendant company from liability in case of accident. In the operation of its car, defendant was bound to take notice of and to respect the rights of the driver of any vehicle on the street. If by the speed of its car it increased the risk of accident to those lawfully upon the streets, it was bound to enlarge commensurably the vigilance and care necessary to avoid the infliction of injuries made more imminent by such speed or management. The rule applied when the crossing is at steam-car tracks to both look and listen does not apply, as a hard and fast rule, to street railways; and the car should have been run in an ordinary manner, with some regard to the fact that streets are open to travelers upon foot or in wagons who may desire to cross the track. Acting upon this fact, the plaintiff's driver had the right to assume that the defendant's cars would not be run in an unusual way or carelessly.

It was not absolutely necessary for him to stop and listen just prior to the time that he turned to the north to cross, but, of course, if he saw the car he could not recklessly proceed. The circumstances as shown here left the question of contributory negligence on the part of the driver in doubt, and we are unable to say, upon the construction which must be given to the evidence, that his contributory negligence conclusively appeared. For that reason the assignments of error pertaining to this point are without merit.

2. Upon cross-examination the driver was asked if he did not remember saying "immediately after the accident, in the presence of the conductor and motorman of the car," that the accident was the result of his own fault. His answer was in the negative. Subsequently counsel for defendant asked the conductor if he ever heard the driver say in his presence and in the presence of the motorman that "it was as much his fault as it was the fault of the motorman." An objection to this question was sustained by the court, and this is assigned as error. In compliance with the rule as to the impeachment of a witness by showing contradictory statements, counsel properly laid the foundation for such an impeachment by putting a question to the driver in which the time, place, and other material matters were distinctly specified. The necessity of properly laying a foundation for impeachment, and what is required, has twice been stated, at least. State v. Hoyt, 13 Minn. 125 (132); Horton v. Chadbourn, 31 Minn. 322, 17 N. W. 865. But, when counsel attempted to show by the conductor contradictory statements made by the driver, they did not confine themselves to the time fixed in the question propounded to him. That question fixed the time as "immediately after the accident," while the one propounded to the conductor was not confined to that time. It was, if he had "ever" heard the driver say that particular thing. The driver was not a party to this action, and his admissions would not bind the plaintiff. The testimony as to what he had said to the conductor was admissible only for the purpose of impeaching his testimony, and for this reason the time should have been fixed exactly as it had been

in the question to him. There was no error in the ruling of the court upon this question.

3. The court charged the jury that:

"The place where this accident occurred was on one of the streets of the city. Both parties have rights in the streets of the city, and those rights, in the main, are alike. The defendant company, of course, cannot turn out, as the plaintiff's servant might turn out, so that in that respect it may be said that the defendant company has a paramount right over its tracks, but beyond that, their duties are reciprocal, and their rights are reciprocal, and they are charged with the same measure of care and the same duties."

An exception was taken to this portion of the charge, and has been made the basis of an assignment of error. It is admitted by counsel that, under the decisions of this court, this portion of the charge would have been correct if it had been conclusively shown that the accident occurred at a street crossing, but they assert that such "is not the law if the accident occurred between streets." No cases are cited by counsel in support of the position that the law as stated by the court is not applicable to cases of collision between street crossings; that is, at points other than street crossings. In some respects a distinction must be made between collisions at crossings and collisions elsewhere on the public highways, but counsel did not suggest to the court below any distinction which would render the charge erroneous, and they have been equally as reticent on the argument here. We can conceive of none which would render the charge fatally incorrect. In the main, the rights of travelers and of the defendant company upon the streets are alike. The defendant company has a paramount right, because it cannot turn out from the tracks upon which the cars are running, while the ordinary driver can. Generally speaking, their rights are reciprocal. And, except as above indicated, both parties are charged with the same measure of care and the same duties.

4. Other assignments need no consideration.

Order affirmed.